IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

**UNITED STATES OF AMERICA,**

    Plaintiff,

v.

**JOSE MANUEL CABADAS,**

    Defendant.

No. 6:20-mj-00186-MK-2

**OPINION & ORDER**

AIKEN, District Judge.

This case comes before the Court on a Motion to Revoke Release Order, ECF No. 128, filed by the Government in two cases: *United States v. Jose Manuel Cabadas*, Case No. 6:07-cr-60030-AA-4, and *United States v. Jose Manuel Cabadas*, Case No. 6:20-mj-00156-MK-2. For the sake of clarity, this Order shall be entered separately in each case. The Court heard oral argument on August 2, 2021. For reasons set forth below, the Motion is GRANTED and Defendant shall remain detained.

## BACKGROUND

Defendant Jose Manuel Cabadas comes before the Court on two cases: *United States v. Jose Manuel Cabadas*, Case No. 6:07-cr-60030-AA-4 (the "2007 Case"), and *United States v. Jose Manuel Cabadas*, Case No. 6:20-mj-00186-MK-2 (the "2020 Case").

In the 2007 Case, Mr. Cabadas pleaded guilty to Knowingly Possessing with the Intent to Distribute 4,325 Grams of Heroin in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(i). ECF

No. 105 in Case No. 6:07-cr-60030-AA-4. On July 17, 2009, Mr. Cabadas was sentenced in the 2007 Case to a term of 120 months in prison with five years of supervised release. *Id.*

On July 31, 2020, Mr. Cabadas was charged in the 2020 Case, along with a number of co-defendants, with Conspiracy to Distribute and Distribution of 500 Grams or More of a Mixture or Substance Containing Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), and 846. ECF No. 1 in Case No. 6:20-mj-00186-MK-2.

On August 4, 2020, Mr. Cabadas appeared before Magistrate Judge Mustafa Kasubhai in the 2020 Case. ECF No. 13 in Case No. 6:20-mj-00186-MK-2. Judge Kasubhai found that the charged offenses created a rebuttable presumption under 18 U.S.C. § 3142(e) that no condition or combination of conditions would reasonably assure the safety of the community and that Mr. Cabasas had not rebutted the presumption. ECF No. 14 in Case No. 6:20-mj-00186-MK-2. Judge Kasubhai found that no condition or combination of conditions would reasonably assure the appearance of Mr. Cabasas as required. *Id.* Accordingly, Mr. Cabadas was ordered detained in the 2020 Case.

At the time his arrest on the charges in the 2020 Case, Mr. Cabadas was still on supervised release in the 2007 Case and he was charged with violation of the terms of his supervision. On September 23, 2020, Mr. Cabadas appeared before Judge Kasubhai for an initial appearance regarding revocation of his supervised release in the 2007 Case. ECF No. 141 in Case No. 6:07-cr-60030-AA-4. Judge Kasubhai found that there was probable cause to hold Mr. Cabadas for a revocation hearing and that Mr. Cabadas had not met his burden of establishing by clear and convincing evidence that he would not flee or pose a danger to another person or the community. ECF No. 142 in Case No. 6:07-cr-60030-AA-4. Accordingly, Mr. Cabadas was ordered detained in the 2007 case.

Mr. Cabadas suffers from Bartter Syndrome, a genetic condition which causes his kidneys to remove too much potassium from his body, known as potassium wasting. Maintenance of this condition is possible through consuming potassium-rich food or taking potassium supplements. Mr. Cabadas also suffers from an inguinal hernia. Mr. Cabadas was in the process of scheduling a surgery to correct his hernia when he was arrested.

BOP is aware of both conditions and took steps to provide Mr. Cabadas with a special diet and to track his potassium levels through blood testing. BOP also arranged for Mr. Cabadas to be transported for surgery to correct his hernia. In preparation for his surgery, Mr. Cabadas was provided with potassium supplements. It is unclear whether Mr. Cabadas took these supplements as directed and the Government has provided evidence that Mr. Cabadas has admitted to not taking other prescribed medications.

When Mr. Cabadas arrived at the surgical center, it was found that his potassium levels were too low for the surgery to safely proceed. The treating physician told Mr. Cabadas that he would have to remain at the surgical center overnight with an IV drip to stabilize his potassium levels so that the surgery could take place the following day. Mr. Cabadas refused and was transported back to the prison. Following his return to prison, Mr. Cabadas also refused to participate in blood testing following an unsuccessful blood draw, although Mr. Cabadas represented at the hearing that he is now cooperating with blood testing.

The BOP has made new arrangements for Mr. Cabadas to have hernia surgery at an undisclosed place and date in September.

Mr. Cabadas moved for temporary release, arguing that if he were out of custody, he would be better able to manage his own potassium levels and arrange for hernia surgery through his own physicians. ECF No. 112.

On July 28, 2021, Judge Kasubhai ordered that Mr. Cabadas be temporarily released under strict conditions of home confinement and GPS monitoring in order to complete his hernia surgery. ECF No. 131.

## DISCUSSION

The Government moves to revoke the order for temporary release issued by Judge Kasubhai. Review of a magistrate judge's release or detention order is *de novo*. *United States v. Koenig*, 912 F.2d 1190, 1192-93 (9th Cir. 1990). In this case, Mr. Cabadas is being detained separately on an alleged violation of the terms of his supervised release in the 2007 Case and on the new charges in the 2020 Case. The analysis of detention is different in each case.

The Bail Reform Act ("BRA") governs the detention of a defendant pending trial. 18 U.S.C. § 3142. The BRA mandates the release of a person pending trial unless the court "finds no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e). "Only in rare circumstances should release be denied, and doubts regarding the propriety of release should be resolved in the defendant's favor." *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). On a motion for pretrial detention, the Government bears the burden of showing by a preponderance of the evidence that the defendant poses a flight risk, and by clear and convincing evidence that the defendant poses a danger to the community. *Id.*

When, as here, there is probable cause to believe the defendant committed an offense under the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, there is a rebuttable presumption "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3). Although the presumption

shifts the burden of production to the defendant, the burden of persuasion remains with the government. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008).

If a defendant proffers evidence to rebut the presumption in favor of detention, a court can then consider four factors in determining whether the pretrial detention standard is met: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's character, physical and mental condition, family and community ties, employment, financial resources, past criminal conduct, and history relating to drug or alcohol abuse, and record concerning appearances at court proceedings; and (4) the nature and seriousness of the danger to any person of the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); *Hir*, 517 F.3d at 1086. The presumption is not erased when a defendant proffers evidence to rebut it. Instead, the presumption "remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)." *Id.* (internal quotation marks and citation omitted).

In cases of supervised release violations, a magistrate judge "may release or detain the person under 18 U.S.C. § 3143(a)(1) pending further proceedings," and the "burden of establishing by clear and convincing evidence that the person will not flee or pose a danger to any other person or to the community rests with the person." Fed. R. Crim. P. 32.1(a)(6).

Courts are also empowered to "by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the persons defense or for another compelling reason." 18 U.S.C. § 3142(i).

In this case, Mr. Cabadas stresses that he is not challenging his underlying orders of detention but is instead seeking temporary release under the "compelling reason" prong of § 3142(i), to seek appropriate care for his hernia. As such, Mr. Cabadas contends, there is no need to engage in the inquiries concerning whether he is a flight risk or a danger to the community. Nevertheless, in the interest of completeness, the Court will address the underlying issue of detention as it has been raised by the Government.

For the reasons set forth on the record, the Court concludes that the prior orders of detention were appropriate in both the 2007 Case and the 2020 Case. Mr. Cabadas has not overcome the rebuttable presumption in the 2020 Case and the Government has carried its burden of showing that Mr. Cabadas represents a danger to the community, based on the alleged activities of the drug trafficking organization, as well as the risk that Mr. Cabadas will abscond if he is released. It is also significant to the Court that Mr. Cabadas allegedly committed the new offenses charged in the 2020 Case while still on supervised release in the 2007 Case. For much the same reasons, the Court concludes that Mr. Cabadas was properly detained for the alleged violation of his supervised release conditions in the 2007 Case.

Turning to the issue of temporary release under § 3142(i), the Court concludes that there is no compelling reason to release Mr. Cabadas at this time. The Government has presented evidence of Mr. Cabadas's failure to comply with the treatment program provided by the BOP and, of particular significance to the Court, his refusal of the overnight IV drip that would have allowed the hernia surgery to go forward. The cancellation of the previous surgery was not brought about by any failure on the part of the BOP. The Court also notes that BOP has already scheduled another hernia surgery in the near future, while no such concrete plans have been made for Mr. Cabadas should he be released to manage his own condition.

As discussed on the record, the Court will continue to monitor this case and a follow up status conference has been set to ensure that circumstances are progressing in such a way that Mr. Cabadas will be able to undergo his hernia surgery as scheduled. Accordingly, the Court GRANTS the Government's Motion to Revoke Release Order, ECF No. 128. Mr. Cabadas will remain in custody, without prejudice to his ability to bring a subsequent motion for temporary release, should the situation so require.

It is so ORDERED and DATED this  4th   day of August 2021

                                         /s/Ann Aiken
                                         ANN AIKEN
                                         United States District Judge